Case number 17-3033, United States of America v. Tyrone Wright, appellate. Mr. Stewart for the appellate, Mr. Graves for the appellate. Good morning, Your Honors. Good morning. May it please the Court. My name is Andrew Stewart, and I represent Mr. Wright on appeal. And in this case, I think that our argument really boils down to whether or not the inquiry conducted by the lower court and its basis for not appointing new counsel to Mr. Wright were sufficient. And while the government points out in its brief that there were a number of issues, I guess, that led to Mr. Wright's dissatisfaction with Mr. Cooper, specifically the competency evaluation that caused some delay, a protective order that prohibited him from looking at certain documents, and these plea offers that he was receiving as opposed to, I guess, perhaps trial preparation or strategy that he'd hoped to engage in with counsel. More importantly, I think it's this acknowledgment by counsel that the relationship between he and his client had broken down to a point where it was going to affect his ability to represent his client. And this is where we come up with this term. And what was the basis for that breakdown, according to counsel? I think that there are two perspectives, obviously, but one of Mr. Wright and one of Mr. Cooper. I think that on the one hand, Mr. Cooper wanted certain releases signed so that he could pursue what I gleaned from the record as being maybe a competency defense. Was that unreasonable with him? I don't think it was unreasonable. What I think was perhaps problematic was the tone of their conversations, as was revealed by some of the statements Mr. Wright made during various colloquies with the court. And I think that – And is there law out there that says we look to the tone of the conversations between the appointed counsel? I don't think that they're – not specifically to the tone, but I think that there is case law that – It talks about – the case is talking about a total breakdown of communication, complete inability. And I think that the insight that's most important is that of Mr. Cooper when he says that whatever the cause of the breakdown of communication is, I don't think it's really that important that you have the attorney telling the court based on that breakdown of communication. But if you have a breakdown that's based on the recalcitrance of the client, it's not going to be solved by a third court-appointed lawyer. Wasn't that the judgment of the district court here? Certainly. If it's only – if it is only the fact that a defendant is difficult, if that is the only reason, I would say that's a correct statement. A third attorney is not going to solve it. And that's, in effect, the judgment of the district court here, right? The problem lay with Mr. Wright. Right. I think – So what's our standard for reviewing that determination by the district court, that the problem here lay with Mr. Wright? How are we supposed to look at that? So if it's just a question of appointing new counsel – Right. I just want to make sure that I'm expressing this to the government, and I both agree that it would have been abuse of discretion. That's a very forgiving standard for district courts, right? Absolutely, Your Honor, absolutely. And that's why I think that the important description of the relationship is that of Mr. Cooper, when he tells the court that it has broken down beyond a point of just friction between an attorney and their client, but it's gotten to a point where now it's affecting his ability to represent his client, even if there is a disagreement over what the strategy is. Even if that's right, the district court then has a decision to make, right? Right. Allow Mr. Wright to go pro se or appoint yet another counsel. Right, and that's where I – And you're asking us to say it was an abuse of discretion for him to say, I'm not going to appoint a third counsel because I fear that we're just going to go in the same – the same pattern has been established here with the difficult client, right? That was his judgment, and your argument has to be based on everything that was in front of the district court judgment, that when he made that decision, I'm not going to appoint another counsel, that was an abuse of discretion. Right, and I think that the problem in the way that the district court dealt with it was telling Mr. Wright, I'm not going to appoint new counsel to you before really getting into what the cause of his concerns were. So Mr. – maybe you're going there. I don't want to interrupt you. I'm happy to answer any questions you have. When I read the transcript, what struck me was how mistrustful Mr. Wright was, that he kept saying that he thought that Mr. Cooper was working with the prosecution, that he didn't understand why he couldn't have access to the grand jury materials, that he didn't understand why after asking for four to six weeks to prepare the case, Mr. Cooper came back to him in a week with the plea offer, and he seemed to me to be laboring under the misapprehension that his counsel was not showing a duty of loyalty and zealous representation to him. Is that something that the law requires the district judge to clear up or not? Certainly, if the court has the ability to clear up a misapprehension, then it does have a responsibility to attempt to do so, and we see that in some of the cases that both the government and I cite where – and now I'm blanking, of course. But in those cases, I think one of them was there was a public defender who was – there was a perception that this public defender somehow wasn't going to be able to effectively represent this client because of a news article, and then a subsequent attorney takes over. But the court engages in a colloquy with the defendant and is explaining, well, this is why you don't have to worry. So in circumstances like that, yes, I think the court does have an obligation to try and clear up those misgivings. In this case, I think that there are a number of issues that sort of contribute to the communication breakdown between Mr. Cooper and Mr. Wright. And so – Well, isn't – aren't those issues, if you phrase it, traceable back to the defendant's insistence that trying to get a plea bargain was working for the other side? And his apparent failure to understand that the attorney's job in this case – the attorney would have been practicing malpractice if he had not been trying to get a plea bargain on this case. Right. I tried about 100 bank robberies, and that's not much of a hyperbole. And I never saw one, I think, where the evidence was any better than this one, unless they caught the guy in the bank. But he seems to think that the attorney is not working for him if he's not able to do something in the way of an affirmative defense and that if he's trying to plea bargain, he's working for the other side. Is there any hope of getting anywhere with the defendant who starts with that proposition? Well, Your Honor, as it relates – Immediate abuse of discretion to not disabuse a defendant of something that's that fundamental to his claim. Generally speaking, I think that it is possible for counsel to be appointed to a defendant, regardless of how difficult they are, and that there exists counsel that can take into consideration some of the bugaboos or – Well, I understand that. Rick Presley says that he can't do that. I've seen – Maybe there exists such counsel, but – And I think that that's one of the – I think you'd have to admit it would be very hard to disabuse this particular defendant of the notion that you are not working for the other side if you were trying to do your duty and get a plea bargain. Well, and I think that that goes back to the way that the court phrased the – or postured the choice for Mr. Wright. His choice was, I'm not going to give you other counsel, so you can use this counsel that you are not happy with, and has also told the court that the communication – the degree of communication is broken down to the point where the attorney doesn't think that they're capable of mounting a defense. Because – and so the – Mr. Wright was left with a choice between this counsel that doesn't think he can communicate with his client and mount a defense, or he can have – he can proceed pro se. Unless my colleagues have further questions, we'll stop you here. Yes, sir. Thank you very much. Because you've earned your rebuttal time, so thank you. Good morning. Good morning. Good morning, and may I please the court. Anwar Graves on behalf of the United States. This court should affirm the decision of the district court for two main reasons. First, the trial court did not abuse its discretion in deciding that appellant was not entitled to substitute counsel. And second, the phoretic colloquy that was used by the district court was sufficient to show that appellant's decision was voluntary. Mr. Graves, can you point me to what you think are the best passages in the record that address Mr. Wright's evident misapprehension about his counsel's loyalty? When I read it, I thought the district court did a very good job in explaining to Mr. Wright the hazards of proceeding pro se. He really went into the details of what that entails and why that's a very bad idea in his view. It was harder for me to see where he addressed Mr. Wright's repeated expressions of mistrust in saying this guy obviously is working with the prosecution. And I didn't see, but I think there may be places you could help me find where the district judge explained that. It's hard for people who are not lawyers to appreciate that a government-paid defense attorney is not working for the case. So in the record, I'd point to A439 and 41, 457, 459, and 479 as places in the record where Judge Contreras addressed the appellant's concerns. And specifically, his concerns were, one, that he was presented plea offers. Another was that grand jury material, protective order was signed for grand jury material. With regards to that point, the trial court informed appellant that that's fairly normal and routine, that defense attorneys enter into those types of agreements in order to get grand jury material before trial. Appellant complained of releases that Mr. Cooper wanted signed to talk to his doctors. And the trial court explained, well, that is important if you're looking to present a diminished capacity defense. So in all of those instances, the trial court did take time to explain to appellant why Mr. Cooper may have been doing what he was doing. And so to answer your question, those would be where I would point. So I'm concerned about – I mean, Mr. Wright told the court that he was not on his antipsychotic medication, right? That's a serious thing. I mean, I don't know a great deal about psychiatry, but presumably someone could suffer from delusions if they're not on their antipsychotic medication. Did the district court spend enough time paying attention to that? It was alerted to that fact. Well, there were two instances. First, when Mr. Cooper first began his representation, he sought a competency hearing. And so the trial court – I'm sorry, the district court sent appellant to the superior court, to their mental health section, to be assessed. After that, the mental health section of the superior court said that he was competent. At that point, both appellant and Mr. Cooper objected. And so the trial court sent him over to the Bureau of Prisons for further competency evaluation, where he again came back as competent. Throughout the course of the trial, and throughout the colloquy, the phoretic colloquy, he was asked about medications. And at a point during trial – or, I'm sorry, right before trial, appellant stated to the trial court that he is on his medication, that he feels fine, and he understands what's going on. So the trial court did, in fact, address that situation. But I'm referring specifically to the antipsychotic medication. What is it called? Risperdal. And I thought the record showed that he told the district court judge that he was not on his Risperdal at that time. He felt fine, but he was not on it. And my question is, is that enough for the district court judge to take his word for how he's doing when we're dealing with an antipsychotic? I will say that there was – throughout the course of that time, and the trial court did not inquire further of that, I will attest. However, Mr. Cooper, with standby counsel, did not raise anything regarding to appellant's mental health or competency. Throughout the course of the trial, we see him making objections, objections that were, in fact, sustained by the trial court on many instances. And nothing about his performance at trial led anyone to believe that he was suffering from any mental health defects. And the trial court made the explicit finding when government counsel asked him to do further colloquy of appellant related to United States v. McKinney. And the trial court went through that colloquy and found that he does not suffer from the same mental health conditions that you see in McKinney. And this trial court stated in McKinney that the district court must first make that finding before mental health becomes a significant factor in assessing his competence to stand trial alone. So I – the government does believe that the trial court did do enough in those instances. So, addressing another point that was made by appellant, Leggett is instructive with regards to whether or not the attorney's representation, whether or not there's difficulty in representing his client, how much weight should be afforded by the court. In Leggett, the attorney in that case stated that – acknowledged that it was difficult to focus on what's going on when he was being second-guessed on everything. Which is essentially what Mr. Cooper was relaying to Judge Contreras. And what this court said in Leggett is that just as friction between a trial counsel and the court does not create a conflict of interest, so too the expected and usual rifts that develop between disappointed defendants and their counsel cannot be characterized as conflicts of interest. And so here, appellant has not met his burden of showing that, in fact, there is good cause for substitute counsel. Moving on to the second point, which is where the Feretta Colloquy was sufficient to show that appellant's decision was, in fact, voluntary. I will note for the record, an appellant, I don't – who disagrees is knowing in intelligence that those factors of Feretta aren't being challenged by appellant. So, addressing strictly with the voluntary prong of that. At first, he was asked during the colloquy on January 10th about his age, education, drug use. He gave answers to all of those questions. He then conveyed why he wished to proceed pro se, and I addressed that in my discussion with Her Honor. And the court went through, dispelled those notions, and the appellant decided to, again, proceed to go pro se. When asked if Mr. Cooper would be ready for trial, his only complaint was that he presented plea offers to me. Could not state a reason for why he did not think he would be ready for trial. The court confirmed they had derided the counsel. And then lastly, he gave one last warning, stating that you should not do this on your own. But yet, appellant decided that he wished to proceed pro se, which is something that he had tried to state on the record ever since he was represented by the Federal Public Defender Service, which is that he wanted to proceed pro se. Something that has always been something he's voiced. And so, Judge Contreras followed the right that he has based on Feretta to give him the ability to proceed pro se. And if there are no further – So do we have a different standard in this circuit of competency to stand trial and competency to represent oneself? So the Indiana case out of Supreme Court was addressed by this court in the United States versus McKinney. There is a separate standard, but again, that's a discretionary standard. And this court stated in McKinney that a district court's discretion to limit a defendant's right to self-representation is triggered only if the court first determines that the defendant suffers from severe mental illness to the point where he is not competent to conduct trial proceedings by himself. And here, the trial court made an explicit finding that appellant does not reach the McKinney standard. And that was after there had been two psychiatric evaluations, both the Superior Court and Bureau of Prisons. That's exactly correct. Yes, Your Honor. We'll see if there are no further questions the government would ask this court to affirm the decision of the district court. Thank you. Does Mr. Stewart have time on the phone? We'll give you a minute if you need it. That's fine, Your Honor. I don't have any additional time. Okay. Okay, great. Mr. Stewart, you were appointed by the court to represent Mr. Wright, the appellant, in this case. We thank you for your assistance. Thank you, Your Honor. The case is submitted.
judges: Griffith, Pillard, Sentelle